# COMMONWEALTH OF MASSACHUSETTS

*Bureau of Special Education Appeals*

In Re: Nelida[1]                                            BSEA#04-0093
&  
Chicopee Public Schools

## DECISION

This decision is issued pursuant to 20 U.S.C. § 1401 et seq., 29 U.S.C. § 794, M.G.L. c. 71B and the regulations promulgated thereunder. This matter's procedural history is pertinent. On April 4, 2004, the Bureau issued a decision after a full hearing finding that the 2003-2004 Individualized Education Plan ("IEP") developed for Nelida by the Chicopee Public Schools ("Chicopee") was not reasonably calculated to provide a free, appropriate public education to her. The Bureau further found that the Parents' unilateral placement at the White Oak School for the 2003-2004 school year was both justified and appropriate. The Bureau ordered Chicopee to reimburse the Parents for all out-of-pocket expenses associated with Nelida's placement at the White Oak School for the 2003-2004 school year.

On April 29, 2004, the Parents submitted a Motion for a Finding of Noncompliance asserting that Chicopee had refused to assume responsibility for both the tuition payments to White Oak and daily student transportation between White Oak and the Student's home. After a hearing on May 21, 2004, the Bureau found Chicopee in non-compliance with the substantive Decision in this matter and directed Chicopee to take immediate corrective action to implement the following orders:

---

[1] Nelida is a pseudonym selected by the Hearing Officer to protect the privacy of the Student in publicly available documents.

    1.      Nelida's "current placement" is the White Oak School;
    2.      Chicopee is responsible for ensuring the provision of a free, appropriate public education to Nelida at the White Oak School throughout the 2003-2004 school year. This responsibility includes:
        a. reimbursing the Parents for all out-of-pocket expenses associated with Nelida's attendance at the White Oak School during the 2003-2004 school year;
        b. assuming financial responsibility for any unpaid 2003-2004 tuition, fees, or book charges incurred by the Student as a result of her attendance at the White Oak School;
        c. assuming financial responsibility for transportation charges and/or arranging for transportation services to and from the White Oak School for the Student;
        d. providing programmatic oversight and ensuring that the procedural protections guaranteed to the Student and her Parents under M.G.L. c. 71B and 20 U.S.C. 1401 et seq are in fact accorded to them by Chicopee, and by Chicopee's surrogate, the White Oak School.

(See Administrative Record, Ruling of May 26, 2004.)

On June 1, 2004, the Parents submitted a Second Motion for Finding of Non-Compliance asserting that Chicopee continued to refuse to reimburse them for legitimate expenses associated with the unilateral placement at White Oak, and also that Chicopee was engaged in a pattern of retaliatory acts against them. The matter was scheduled for hearing on June 14, 2004, but was postponed by agreement of the parties. Most outstanding issues appeared to be resolved through a conference call held on June 18, 2004. After a period of inactivity the Bureau issued a show cause order indicating an intent to dismiss the matter on September 25, 2004. The parties responded with a request that the Bureau resolve two outstanding legal issues. The parties submitted written briefs and presented oral arguments on the two non-compliance issues on September 23, 2004. The parties did not submit any factual evidence to supplement the original hearing record.

<u>Issues</u>:

    1.      Are the Parents entitled to be reimbursed for a) only those miles for which the student is physically present in the car or b) the actual roundtrip mileage incurred by the Parent in transporting the Student to school in the morning and returning the Student home at the conclusion of the school day?

    2.    At what rate per mile should parents be reimbursed for necessary special education related parent provided transportation?

<u>Legal Framework</u>

Reimbursement of parental expenses incurred in securing appropriate special education services for a student the public school has failed to program properly is a universally accepted equitable remedy under the IDEA. <u>School Committee of the Town of Burlington v. Dept. of Education</u>, 471 U.S. 359 (1985). Awards of equitable relief under the IDEA are governed by the "reasonableness" standard which considers all relevant factors surrounding the decision to undertake the action, and the parameters of the action itself. <u>See</u>: <u>Florence County School District Four v. Carter</u>, 510 U.S. 7 (1993) At a minimum parents seeking reimbursement must show that:

    a)    there has been a violation of the IDEA;
    b)    the privately secured services provided were appropriate; and
    c)    the amount of reimbursement requested is reasonable.

Other equitable factors may be weighed depending on the unique facts and circumstances presented in each case. See: <u>Bucks County v. Demora</u>, 379 F. 3d 61 (3rd Cir. 2004).

In that recently decided matter the 3rd Circuit cited with approval an old 1st Circuit decision in which the court noted that it held an "expansive view of reimbursement" not limited to actual out-of pocket expenses. <u>Hurry v. Jones</u>, 734 F.2d 879 (1st Cir. 1984). Instead the first circuit court in H<u>urry</u> held that a parent who proved a school failure to provide appropriate special education or related services under the EAHCA (the IDEA's predecessor statute) is entitled not only to actual costs, but to compensation for the time and effort spent in delivering services the school should have provided. <u>Hurry</u>, <u>supra</u> at 884. Where a school has failed to meet its statutory obligation to provide FAPE, therefore, reimbursement is a broad equitable mechanism designed to make the student

3

and her family "whole". With this admonition in mind I evaluate the claims of the parties on two distinctly narrow issues.

Conclusions

Issue I:   The Parents seek reimbursement for the mileage incurred in making two daily round trips between their home in Chicopee, Ma. and the White Oak School in Westfield, Ma., a distance of approximately fifteen miles each way. They argue that none of their transportation costs would have been incurred had Chicopee discharged its obligation to provide FAPE in the first instance. At a minimum, they argue, Chicopee could have included Nelida in the transportation already being provided to Chicopee students attending White Oak, and certainly should have after the BSEA Decision was issued in April, 2004. The Parents note that it would be unreasonable to expect them to wait at White Oak during the school day to avoid incurring the mileage expense associated with the return trip home without the Student. They point out that it is likely that school provided transportation service charges include consideration of the expense of multiple trips to and from the delivery point, rather than contemplating that a vehicle would remain idle at the White Oak School the entire day.

Chicopee argues that it is prohibited by regulation from reimbursing a parent for any transportation expense incurred when the student is not present in the car. Chicopee cites 603 CMR 28.07 (6) in support of its position. That section of the special education regulations provides:

> (6) **When a parent provides transportation.** If a parent provides transportation to an eligible student requiring special transportation consistent with the requirements of 603 CMR 28.05 (5)(b) of these regulations, the school district shall reimburse such parent the prevailing rate per mile for state employees. Reimbursement shall be for no more than the round-trip distance between the home and the school for school attendance and school-sponsored extracurricular activities. Mileage shall be determined based on a direct route between the child's home and school. No parent shall be obligated to provide such transportation.

4

Chicopee relies on the phrase "reimbursement shall be for no more than <u>the</u> round trip distance between home and school…." (emphasis added) to support its argument that it may reimburse the Parent for <u>only</u> one round trip per school day. That reliance is misplaced for several reasons. First, I am not persuaded that the article "the" is as restrictive as claimed by Chicopee. The "plain and ordinary" reading Chicopee urges encompasses a reasonable view of "the roundtrip" to emphasize "round trip" as the restrictive words rather than the article "the". This reading would provide a reasonable restriction when the parent's driving route includes the school as one of several stops for work, errands, etc, in a single trip.[2] Second, 603 CMR 28.07(6) refers back to 603 CMR 28.05(5)(B) which concerns parentally provided transportation undertaken with Team consent. Therefore 603 CMR 28.07(6) is a prospective regulation. It applies to parents who undertake transportation as a choice for any number of reasons: timing, perceived safety, congeniality, etc. See: <u>North Reading Public Schools</u>, 4 MSER 78 (McAvoy 1998). The regulatory language, and any reasonable restrictions it may contain, may be evaluated by the Parent before committing to provide transportation on behalf of the school. The school remains the guarantor of access to the special education placement. This duty is emphasized by the regulation's final sentence. The regulation, on its face, does not apply to requests for reimbursement for expenses incurred in stepping into the School's shoes where the School failed to provide FAPE. I decline to read that intent into the regulation. Unlike the parent in North Reading Public Schools, <u>supra</u>, the Parent in the instant matter had no alternative but to provide Nelida's transportation, in whatever manner afforded Nelida appropriate access to the White Oak School.

---

[2] I note that this "plain and ordinary" reading of the Massachusetts regulation is consistent with the IDEA definition of "transportation" as "travel to and from school". 34 CFR § 300.24 (b)(15).

Most importantly, however, Chicopee cannot use regulatory language such as this to shield itself from the consequences of its failure to provide FAPE to Nelida. Chicopee's argument elevates regulatory form over the spirit and substance of the IDEA. Therefore I find that the Parents' request for reimbursement of mileage expenses for 2 roundtrips daily between their home and the White Oak School to be reasonable and not prohibited by 603 CMR 28.07(6).

Similarly Chicopee seeks to limit the Parents' mileage reimbursement to the 12.32 miles between their home and the White Oak School as indicated on a commercial, internet-based, mapping service. The Parents averred that the 15 mile route they use is quicker and more direct, than the route shown on the mapping service. There is no evidence to the contrary. I take administrative notice of the fact that internet mapping services at times provide routes that are unrealistic, unavailable, or otherwise unacceptable to the parties seeking directions. I therefore credit the Parents' choice of route. I further find that the difference between the 12.32 mile route and the 15 mile route is insignificant. It is well within normal variation of driving patterns and use, and does not indicate any parental deviation from a "direct" route between White Oak and their home. The tiny mileage differential between the routes advocated by the School and the Parents does not warrant further investigation into this issue.

The Parents' mileage reimbursement request is reasonable. There is no credible evidence in this record to suggest otherwise. Therefore the Parents are entitled to be reimbursed for mileage costs they actually incurred in providing two 30 mile roundtrips of substitute transportation.[3]

---

[3] See: California v. McCloud Union Elementary School District, 31 IDELR 229 (7/ 7/99); River Forest School District No. 90 v. Illinois State Board of Education; 24 IDELR 36 (4/17/96)

6

Issue 2: Referring to the same regulation, 603 CMR 28.07(6), <u>supra</u>, Chicopee argues that it must reimburse the Parents at the "prevailing rate per mile for state employees" currently, 28 cents per mile. The Parents request reimbursement at the rate allowed by the U.S. Internal Revenue Service, 34.5 cents per mile. In assessing which mileage rate should be used to calculate the Parents' reimbursement I again use the "reasonableness" standard for crafting equitable reimbursement. Though not binding upon Chicopee (see discussion above), the mileage rate set out in 603 CMR 28.07(6) does indicate the state standard for reasonableness. Adherence to the state rate set out in multiple sets of regulations also provides for a degree of predictability for budget officers, for uniformity among districts and for parity among reimbursement awards. Where, as here, Parents have provided no proof of actual out of pocket expenses which would make selection of the state mileage rate for reimbursement unreasonable or inequitable, I can find no justification for using an alternate calculation.

The Parents argue that reimbursement at the federal rate of 34.5 cents per mile more accurately reflects the costs incurred by them in providing substitute transportation. As there is no actual expense data before me I am unable to evaluate this argument. The Parents also argue that selection of the federal rate promotes uniformity of reimbursement awards among states, a goal which is consistent with the IDEA's grant of "a basic floor of opportunity" to all students with disabilities regardless of residence. While it is an appealing argument the IDEA also leaves the states free to craft programs and policies that are responsive to the unique geography, populations and conditions in each state. The selection of 28 cents per mile as an estimate of the cost of operation of a motor vehicle in Massachusetts may well reflect the local conditions. There is no evidence in the record to the contrary. I therefore find that 28 cents per mile is a reasonable estimate

7

of the value of the transportation service the Parents provided to the School on behalf of their daughter.

Order

Based on the findings set out in the BSEA decision of April 4, 2004, as supplemented by the conclusions noted above, it is my determination that:

1) Chicopee violated the IDEA by failing to provide Nelida with a free, appropriate public education during the 2003-2004 school year;
2) Nelida's unilateral placement at the White Oak School for the 2003-2004 school year was appropriate.
3) The twice daily 30 mile round trip transportation between the home and the White Oak School provided by the Parents in order to ensure that Nelida received appropriate special education services, was reasonable and appropriate.
4) Selection of the "prevailing rate per mile for state employees" as the mileage rate for calculation of the reimbursement due to the Parents is reasonable.

Therefore, Chicopee shall reimburse the Parents for 60 miles per day for 164 days, at a rate of 28 cents per mile, for a total of: $2755.20 within thirty days of the date of this decision.

Lindsay Byrne, Hearing Officer                    Date: